NOTICE
Decision filed 07/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260281-U

NO. 5-26-0281

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | White County. |
| | ) | |
| v. | ) | No. 26-CF-47 |
| | ) | |
| DARREN R. HAYS, | ) | Honorable |
| | ) | Jonathan T. Braden, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Hackett and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the State failed to prove by clear and convincing evidence that the defendant's release posed a real and present threat or that no condition or conditions could mitigate any risk of threat, the trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are reversed.

¶ 2    Defendant Darren R. Hays appeals pursuant to the Pretrial Fairness Act (725 ILCS 5/110-1 *et seq.* (West 2024)) from the White County trial court's March 19, 2026, order granting the State's petition to deny pretrial release, as well as the court's March 26, 2026, order denying his motion for relief and immediate release. For the following reasons, we reverse.

¶ 3                        I. BACKGROUND

¶ 4    On March 11, 2026, the defendant was arrested and charged with six counts of custodial sexual misconduct (720 ILCS 5/11-9.2(a)(1) (West 2024)) and one count of official misconduct

1

(*id.* § 33-3(a)(2)), all Class 3 felonies. The charges related to the defendant's actions while employed as a guard at the White County jail. During the months of October and November 2025, the defendant was alleged to have engaged in six instances of sexual penetration with the victim, an inmate at the jail. These acts occurred while the victim was unable to give consent, due to the custodial authority the defendant held over the victim.

¶ 5    The State filed a verified petition to deny pretrial release on March 19, 2026, alleging that the defendant was charged with a qualifying offense, that his release posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. 725 ILCS 5/110-6.1(a)(5), (e)(3) (West 2024). The trial court held a hearing on the State's petition the same day.

¶ 6                    A. Hearing on Petition to Deny Pretrial Release

¶ 7    The State presented its evidence by proffer. According to the State, the police special agent who investigated the matter would testify to his interview with the victim and review of surveillance footage that partially corroborated her statements. The evidence would show that while there was no physical force, the defendant obtained sexual acts from the victim through the use of coercion, special favors, the custodial relationship, and his position of authority over her. The State argued that the defendant was charged with a qualifying offense and that his pretrial release posed a real and present threat to the safety of any person, persons, or the community. The State further alleged that that no condition or combination of conditions could mitigate the threat the defendant posed to the community.

¶ 8    The defense argued that the defendant was 57 years old and had no criminal history; that the State was relying primarily on the charges themselves; that there were no allegations of force, only the abuse of his position of authority; and that the defendant no longer held that authority or

2

had access to anyone he might endanger with it. The defense further argued that the defendant had resided in the same town for 40 years and lived with his wife. The defense asked that the defendant be released to his home and stated that the defendant would submit to any pretrial release conditions. Lastly, the defense noted that the defendant was free and out amongst the public for almost four months after the alleged incidents and before his arrest—from November 2025 to March 2026—and there was no evidence of him posing a threat to anyone during that time.

¶ 9     The circuit court found that the State had proven by clear and convincing evidence that the proof was evident and the presumption great that the defendant committed the offenses. The court expressed that it was troubled by the escalating pattern of behavior the defendant exhibited toward the victim, grooming her over the course of the relevant period. The court also found indirect harm flowing from the charges, and expressed concern over what other actions the defendant might take with any other person he had any position of authority over. It was also concerning that the defendant was a public servant, sworn to uphold certain duties and protect the very same people he harmed with his conduct.

¶ 10    The circuit court stated that "it's this type of egregious conduct that erodes public trust in our institutions, public trust in law enforcement," and "it puts the community at large in a position to fairly question whether they would be safe in the custody of White County, whether law enforcement won't respect their rights, [and] whether they will be treated fairly." The court found that the evidence demonstrated that the defendant was unable to follow the law, and "while there are conditions that have been suggested that perhaps may mitigate the risk posed to the specific victim," the court could not ignore the risk to the public. The circuit court expressed a lack of confidence in the likelihood that the defendant would follow any terms and conditions set by the

3

court, and could not see how any such conditions could mitigate the public risk. Thus, the circuit court granted the State's petition to deny pretrial release.

¶ 11                              B. Motion for Relief

¶ 12     On March 24, 2026, the defense filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). The defense argued that the circuit court failed to consider the following factors in ruling on the State's petition: the defendant's community ties, his lack of criminal history, his physical and mental health, his willingness to abide by any terms of pretrial release, and the fact that no weapons were used in the alleged offense.

¶ 13     The circuit court held a hearing on the motion on March 26, 2026. At the hearing, the defense argued that electronic monitoring and home confinement would suffice to keep the public safe. The defendant had no criminal record, mental health history, or any other background indicating a violent or abusive nature. The defense noted that the defendant was out in the community for almost four months after the alleged incidents and before he was charged. In that time, he violated no laws and posed no danger to the public. Additionally, in its written order granting the State's petition the circuit court had not checked any of the boxes next to any of the listed specific and articulable facts that supported the court's decision to deny release.

¶ 14     The defense reiterated that the defendant had been fired from his position as a jail guard and had no access to the victim. Therefore, in addition to posing no threat to the general public, the defendant was not a danger to her. The defendant had also made no statements that could be held against him. The defense further acknowledged that the alleged offenses involved an egregious breach of public trust, but argued that this was inherent to the offense, and would apply to anyone charged with it. The defense concluded that this alone was insufficient to deny the defendant pretrial release, where no other factors supported such denial.

4

¶ 15    The State notified the circuit court that it stood on its position at the petition hearing, but reiterated that the victim was statutorily unable to give consent. The State also added that there was surveillance footage evidence against the defendant, and forensic testing indicated that the defendant could not be excluded from DNA appearing on the victim's ear, neck, and breast.

¶ 16    The circuit court agreed with the defense that anyone charged with this type of offense would commit an egregious breach of public trust, but said that the specific facts were "especially concerning" in this particular case, as opposed to any other case involving the same charges, because of the pattern of criminal conduct and repeated breaches of public trust. The court found that the State had proven by clear and convincing evidence that the proof was evident and the presumption great that the defendant committed the offenses.

¶ 17    The court further found that the evidence indicated that the defendant "engaged in calculated conduct over the course of a couple of months," going from flirtatious behavior to multiple alleged sexual acts. He also did not stop of his own accord, but only because the victim came forward. She also explained why she did not say anything sooner—because the defendant manipulated her into silence through favors and special treatment. The court considered this to be predatory behavior, and not a mere lapse of judgment. The court also acknowledged that the specific victim would be safe from the defendant, but the court believed that the predatory and manipulative nature of the offense, as well as the abuse of power occurring over a two-month period, made the defendant a general danger to anyone in the community.

¶ 18    The court thus denied the motion for relief. The defendant filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h), which conferred jurisdiction on this court. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024).

¶ 19                    II. ANALYSIS

¶ 20    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act (Act). Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024).

¶ 21    If the State files a petition requesting denial of pretrial release,

> "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7.

725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 ("Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.)).

¶ 22    The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the court concludes the defendant "poses a real and present threat to the safety of any person" or the community. 725 ILCS 5/110-6.1(a) (West 2024). The statute provides a nonexclusive list of "[f]actors to be considered in making a determination of dangerousness" that the trial court may consider in assessing whether the defendant poses such a threat. *Id.* § 110-6.1(g). These include the nature and circumstances of any offense charged, the

6

defendant's history and characteristics, the identity of any person whose safety the defendant is believed to threaten, and "[a]ny other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 23    If the trial court finds the State proved a threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In making this determination, the court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including character, physical and mental conditions, community ties, criminal history, record of appearing at court proceedings, and whether the defendant was on probation, parole, or other release pending trial at the time of the offense; (4) the nature and seriousness of the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.*

¶ 24    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. In the latter case, as here, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

7

¶ 25     On appeal, the defendant does not challenge that he committed a qualifying offense. He first argues that the State failed to prove a "real and present threat." He states that the circuit court's decision was not individualized as required by section 110-6.1(f)(7) of the Act (725 ILCS 5/110-6.1(f)(7) (West 2024)). The defendant further argues that the State presented no evidence of his being an actual threat to anyone except the victim, to whom the circuit court acknowledged the defendant no longer had access. He also states that, in explaining its decision, the circuit court cited the nature and circumstances of the charges—the escalating pattern of behavior and the abuse of authority that he could potentially use against anyone else—and argues that the court's remarks show that it solely relied on the general risk to society inherent in the charges.

¶ 26     Next, the defendant contends that the State failed to prove that no condition(s) could mitigate any risk. Here, he again references the almost four months between the alleged incidents and his arrest, during which time he was suspended from his position as a correctional officer. He did not violate any laws or commit any other acts indicative of being a danger to the community during that time. He further notes that the State presented no evidence as to why the suggested conditions of home confinement and electronic monitoring would not mitigate risk, whereas the defense stated that the defendant was willing to abide by any pretrial release conditions. The State even asked the court, if it did not grant the State's petition, to "at least" order home confinement, electronic monitoring, surrender of his Firearm Owner Identification (FOID) card and all firearms, no contact with the victim, and that he not be in a position of authority over anyone pending trial. Furthermore, the circuit court recognized that there were conditions that "perhaps may mitigate the risk posed to the specific victim," but found that they would not mitigate the risk to the public.

¶ 27     Lastly, the defendant argues that the circuit court abused its discretion by failing to consider all statutory factors and make an individualized finding as required by the Act. He notes that the

8

court's oral and written findings focus on the seriousness of the offense and the breach of public trust, but make no mention of several other statutory factors, including lack of criminal history, strong community ties, inability to harm the specific victim, whether the defendant had access to weapons, and willingness to comply with any conditions. He contends that the court did not consider any evidence beyond the nature of the offenses, and the State did not present any evidence outside of this one factor.

¶ 28    The State responds that there was sufficient evidence presented under the statutory dangerousness factors to deny release. The circuit court found it relevant that the defendant engaged in a pattern of behavior starting with grooming the victim and ending with repeated sexual conduct, while manipulating her into silence. The court found this to be more than a mere lapse in judgment, and described his behavior as predatory. He also did not stop of his own accord. The court was concerned that the defendant would engage in similar behavior toward anyone else he had any authority over, whether through employment or otherwise. Additionally, the court considered the fact that the defendant was a public servant sworn to protect the very people he harmed with his conduct. The court believed the predatory nature of the offense and abuse of power made the defendant a danger to the community, and showed that he could not abide by the laws of Illinois. The State concludes that the circuit court considered more than simply the charged offenses, but clearly considered the nature and circumstances of the offenses, the identity of any person whose safety the defendant threatens, and the nature of the threat.

¶ 29    Next, the State argues that the circuit court did not fail to consider whether any conditions of pretrial release would mitigate the threat; rather, it disagreed with the defense's position. The State cites *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 41, which states, "In the absence of an explicit indication to the contrary, [this court] will presume that the [circuit] court considered all

available conditions of release on such a record." The State also acknowledges that while it did not expressly address the efficacy of any conditions, it did proffer evidence addressing this question in arguing for dangerousness.

¶ 30    The State further draws a comparison to *People v. Romine*, citing the following:

> "Ultimately, the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders— or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release under the Act does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20.

The State argues that the facts of the present case present such a "departure," due to the defendant's grooming of the victim, his repeated course of conduct and manipulation, and his disregard for Illinois law.

¶ 31    The State further contends that these factors also show that the defendant would not abide by any conditions imposed by the court, and so the threat of danger the defendant poses to the public could not be mitigated by home confinement and electronic monitoring. Additionally, even under those conditions, he would still be allowed to leave the home twice a week for basic activities, and could therefore still engage in dangerous behavior in public. Lastly, the State argues that the defendant has waived any argument that the circuit court failed to make individualized findings because he raises it for the first time on appeal and did not mention it in his motion for relief.

¶ 32    Beginning with the State's position that the defendant has waived any argument that the circuit court did not base its decision on individualized findings, we note that the defendant's motion for relief does include allegations that the court failed to consider various factors, such as community ties, physical and mental health, willingness to abide by any terms of pretrial release,

the lack of a weapon used in the alleged offense, and the lack of criminal history. The defendant has also consistently maintained that the circuit court relied on the general nature of the charged offenses rather than a comprehensive review of all the statutory factors. Therefore, to the extent that the defendant raised the aforementioned points before the circuit court, they are not waived on appeal.

¶ 33 Next, we find the State's reliance on *Romine* to support the position that the defendant cannot be expected to follow court orders or refrain from endangering the public based primarily on the severity of his charged conduct to be misplaced. In *Romine*, the defendant was alleged to have murdered his mother, abandoned her body, lied to the police, and otherwise attempted to cover up his actions. *Id.* ¶¶ 21-22. In the present matter, while it is clear that the defendant's alleged actions constituted an egregious breach of his sworn public duty and an abuse of his authority, we decline to find that it rises to such a level of deviation from societal norms that it outweighs the lack of any other evidence regarding the defendant's criminal record, social or behavioral history, violent character, or any other relevant factor.

¶ 34 However, we recognize that the State did proffer specific, individualized facts regarding the circumstances under which the defendant committed the alleged acts. The defendant was charged with custodial sexual misconduct and official misconduct. While the breach of trust and violation of public duty that the court referenced in its decisions are inherently aspects of these charges, likely applicable to anyone in the defendant's position, the circuit court, in explaining its decision, detailed the specific nature of the defendant's alleged actions, including grooming the victim with flirtation and favors, manipulating her into silence, and failing to come forward or

11

voluntarily cease his behavior. Though we note that under the *de novo* standard of review, we need not analyze the circuit court's stated bases for its decision.[1]

¶ 35 Nevertheless, we ultimately agree with the defendant that the offenses themselves, without further consideration of his individual background and characteristics—apart from those mentioned above—were insufficient as a basis for denying pretrial release. As the court stated in *People v. Atterberry*,

> "The legislature has included many offenses that are potentially detainable under the 'dangerousness' standard. But the fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety. Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release. 725 ILCS 5/110-6.1(e)(3) (West 2022)." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

Again, it is undisputed that the defendant was charged with a detainable offense. However, in light of his otherwise law-abiding, nonviolent history, this was insufficient to show either dangerousness or the potential ineffectiveness of any pretrial release conditions.

¶ 36 Furthermore, the evidence that the State did present did not show that the defendant would be a danger to either the specific victim or the general public. As the defendant points out, he no longer has any access to the victim, following his termination. There was no evidence of the defendant ever coercing sexual acts from another person through the use of violence or physical force—only through abusing his authority over an individual. There was also no evidence that the defendant would have the opportunity to be in any position of authority, whether through

---

[1]This also applies to the defendant's argument on appeal that the circuit court's oral and written findings do not mention the factors in favor of release and focus only on the nature of the offense, and that the circuit court did not discuss any specific conditions of pretrial release.

employment or otherwise, that would make him a threat to anyone in a subordinate or custodial position relative to him.

¶ 37 Lastly, there was no evidence that there are no appropriate pretrial release conditions that could mitigate any risk that might exist. The State suggested to the circuit court that, if release were to be granted, it should be under the conditions of home confinement, electronic monitoring, the revocation of the defendant's FOID card and any firearms in his possession, and that the defendant not hold any position of authority over other individuals. Notably, the State did not present any argument to the court as to why no condition or conditions could mitigate the defendant's risk of dangerousness. See *People v. Slaten*, 2024 IL App (2d) 240015, ¶ 24 (agreeing with the defendant's challenge to the ruling on a lack of conditions that could mitigate the risk of willful flight where the State never argued that no condition or conditions could mitigate that risk); see also *Stock*, 2023 IL App (1st) 231753, ¶ 17 (finding that the State did not meet its burden of proof where it merely "made a conclusory statement that no condition or combination of conditions could mitigate the threat posed by defendant, [but] it offered no evidence to support that conclusion").

¶ 38 The circuit court found that no conditions could mitigate the risk of danger based on the State's proffer that the defendant committed the offense with a disregard for Illinois law and in violation of his sworn duty to protect the public. However, the base allegations that the defendant committed the offense alone are insufficient to prove a lack of mitigating conditions. See *id.* ¶ 18 (the bare allegations of the basic elements of the offense cannot, on their own, be sufficient to prove a lack of mitigating conditions, as finding otherwise would be at odds with the presumption that all defendants are eligible for pretrial release). By contrast, the defendant did present evidence of factors in his favor, including community ties, lack of criminal history or any history of failing

13

to appear in court, and the lack of violence in both the charged offenses and in his social history. Thus, even if we were to find that the State presented sufficient evidence of dangerousness, it failed to show that no condition or set of conditions could mitigate the threat.

¶ 39                                    III. CONCLUSION

¶ 40    Based on the foregoing reasons, we reverse the trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief. We remand the matter so the trial court may order appropriate conditions of release.

¶ 41    Reversed and remanded.